IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CTI Development, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>Citigroup Inc. and MRC Holdings, Inc.,<br><br>    Defendant. | CASE NO. 3:21-CV-207 |

**COMPLAINT**

Plaintiff CTI Development, LLC ("CTI" or "Plaintiff") submits this Complaint against Defendants Citigroup Inc. ("Citigroup") and MRC Holdings, Inc. ("MRC," and, collectively, the "Citigroup Defendants") and alleges:

**I.**     **The Nature of the Action.**

1.     Over the years, the Citigroup Defendants and their predecessors dumped slag onto properties now owned by the Citigroup Defendants (the "Citigroup's Property") and Plaintiff (the "Plaintiff's Property") in Alton, Illinois. Environmentally hazardous conditions exist on the both the properties today because of the historic dumping, and because Citigroup Defendants' have failed to remove or remediate a slag waste pile (the "Slag Pile") and its hazardous constituents that continue to migrate deeper into Plaintiff's Property and leach hazardous waste onto and under Plaintiff's Property. Attached as Exhibit A is a map of the adjacent properties prepared by an environmental consultant for the Citigroup Defendants, which shows the approximate boundary of Citigroup's Property, the encroachment of the Slag Pile (referred to as the "Aluminum Dross Pile" on Exhibit A) from Citigroup's Property south onto Plaintiff's Property.

2.     Instead of cleaning up its hazardous waste, the Citigroup Defendants allowed—and continue to allow—this pile of hazardous waste and its hazardous constituents to migrate onto

Plaintiff's Property.

3. Due to Citigroup Defendants' inaction and malfeasance, a massive volume of the hazardous waste migrated and was dumped onto Plaintiff's Property throughout Citigroup Defendants' ownership of their property.

4. The Citigroup Defendants recently took meager steps to investigate the portion of Slag Pile on their own property, but Citigroup Defendants refuse to address the hazardous waste and constituents that have migrated off their property and onto Plaintiff's Property.

5. Plaintiff has demanded that the Citigroup Defendants remove the Slag Pile and other contaminated environmental media from Plaintiff's Property, but the Citigroup Defendants have refused to do so.

6. The Citigroup Defendants' continuing violation of Plaintiff's property rights and the environmentally dangerous character of the Slag Pile potentially endangers human health and the environment and diminishes the economic value of Plaintiff's real estate.

7. Citigroup, which is ranked 31 in the Fortune 500 largest companies for 2020, is the successor to U.S. Reduction Company ("USRC") and the American Can Corporation ("ACC"), and, as their successor, operated an Aluminum Smelter at Citigroup's Property. Citigroup, through USRC and ACC, added waste to the Slag Pile both on Citigroup's Property and Plaintiff's Property, and caused waste to expand further onto the Plaintiff's Property.

8. MRC, a subsidiary of Citigroup, is the current owner and/or operator of Citigroup's Property and is liable under the Comprehensive Environmental Response, Compensation, and Liabilities Act ("CERCLA") as the current owner and/or operator of Citigroup's Property.

9. The Citigroup Defendants arranged for the disposal of waste (including slag waste) in the Slag Pile. Preliminary investigation has detected released hazardous substances in, at,

around and in the vicinity of the Slag Pile. These hazardous substances include, without limitation, lead, zinc, cadmium, chromium, and PCBs.

10. Defendant Citigroup and MRC are responsible parties under CERCLA, and required to remediate the Slag Pile.

11. Plaintiff is a "bona fide prospective purchaser" as defined by CERCLA.

12. The Citigroup Defendants are responsible for discharging slag and other hazardous substances in and around Citigroup's Property and on the Plaintiff's Property and are therefore required to remediate or pay for the remediation of the Slag Pile and any other associated waste and impacted environmental media.

13. Plaintiff seeks immediate abatement of the Slag Pile releases because, unabated, the Slag Pile may pose an imminent and substantial endangerment to public health and the environment.

14. Plaintiff is working with the State of Illinois to remediate the Plaintiff's Property. Because the Slag Pile and its hazardous waste constituents are currently migrating onto Plaintiff's Property from Citigroup's Property, any remediation Plaintiff undertakes on its Property is ineffective without Citigroup remediating the actual source of the contamination.

15. The Citigroup Defendants' failure to address the entire Slag Pile creates potential hazards for Plaintiff and future owners of the Plaintiff's Property. These potential liabilities result from the possibility of injury to neighboring property owners and visitors to the area, and the possibility of government lawsuits, as contaminants pass through the Plaintiff's Property, move off-site, and potentially discharge into the Mississippi River. Upon information and belief, these potential liabilities will persist for as long as the Slag Pile is not addressed.

16. Plaintiff seeks an immediate abatement and removal of the Slag Pile,

72760295.4

reimbursement to Plaintiff for its past and future costs, monetary damages pursuant to Illinois common law, and preliminary and permanent injunctive relief.

## II. Jurisdiction and Venue.

17. This Court has subject matter jurisdiction based upon CERCLA, 42 U.S.C. §§ 9607 and 9613; the existence of a federal question, 28 U.S.C. § 1331; and there being diversity of citizenship among the parties and the amount in controversy exceeding $75,000.00, 28 U.S.C. § 1332. This Court has supplemental jurisdiction over the state law claims based on 28 U.S.C. § 1367 because said claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

18. Additionally, this Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 9613(g)(2).

19. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395, 42 U.S.C. §§ 9607(a) because the releases or threatened releases of hazardous substances, the acts and omissions of Defendants, and the damages incurred and to be incurred by Plaintiff giving rise to the claims in this action occurred in this District, because the site at issue is located in this District, and because the alleged endangerment occurred and is occurring in this District.

   a. Plaintiff's Property is located in Alton, Madison County, Illinois. The Plaintiff's Property has an address of 1 Chessen Lane, Alton, Madison County, Illinois; and

   b. Citigroup's Property is located in Alton, Madison County, Illinois, directly northeast and adjacent to the Plaintiff's Property.

20. On or about December 1, 2020, Plaintiff provided written notice of its intent to bring this action, as required by § 310(d)(1) of CERCLA, 42 U.S.C. § 9659(d)(1). More than 60 days have passed since these notices were received, and neither the United States Environmental Protection Agency ("USEPA") nor the Illinois Environmental Protection Agency ("IEPA") has commenced or is diligently prosecuting a civil or criminal action to redress the violations.

4

72760295.4

21. On or about December 1, 2020, Plaintiff demanded in writing that Citigroup Defendants pay its response costs.

**III.  Parties.**

22. Plaintiff CTI is a limited liability company organized under the laws of Delaware.

23. Plaintiff purchased Plaintiff's Property in August 2019, and is a "bona fide prospective purchaser" as defined by CERCLA Section 101(40).

24. Upon information and belief, Citigroup is a Delaware corporation with its principal place of business in New York, New York and is the successor to, among others, USRC and ACC.

25. USRC owned and operated an Aluminum Smelter on Citigroup's Property.

26. USRC and ACC smelting operations produced aluminum slag, which was discharged directly onto the ground in a Slag Pile that now straddles the property line between Citigroup's Property and the Plaintiff's Property.

27. In or about 1976, USRC merged into ACC and ACC continued to operate the Aluminum Smelter and add to the Slag Pile.

28. In 1987, ACC changed its name to Primerica Corporation.

29. In 1993, Primerica Corporation merged with Travelers Inc., which then became Travelers Group in 1994.

30. Travelers Group and Citicorp merged and became Citigroup in or around 1998.

31. MRC is a subsidiary of Citigroup and is, upon information and belief, the present-day owner and/or operator of Citigroup's Property.

32. The Citigroup Defendants are responsible for complying with all environmental laws pertaining to the operation and ownership of Citigroup's Property, including current and past pollution emanating from Citigroup's Property.

**IV.  Factual Background.**

33. Citigroup's Property is a facility located in Alton, Illinois. The Mississippi River is about 2,000 feet south of Citigroup's Property.

34. The Plaintiff's Property is generally located to the south of Citigroup's Property, between Citigroup's Property and the Mississippi River as depicted on Exhibit A.

35. USRC/ACC operated the Aluminum Smelter at Citigroup's Property and, upon information and belief, dumped waste that is now a part of the Slag Pile from at least 1969-1982.

36. In 2018, Illinois EPA ("IEPA") personnel from the Office of Site Evaluation collected samples in and around the Slag Pile on Citigroup's Property and Plaintiff's Property.

37. IEPA found hazardous levels of lead, zinc, cadmium, chromium, and PCBs.

38. IEPA calculated that the Slag Pile is approximately 188,846.919 square feet in size. IEPA did not calculate the depth of the pile.

39. IEPA held that "according to historical aerial photography, it is clearly visible that waste material from the Aluminum Smelter was being deposited on the south side of the property."

40. The Citigroup Defendants have made no effort to contain the slag or prevent hazardous substances from further migrating to the Plaintiff's Property and/or the Mississippi River.

41. In 2020, the Citigroup Defendants had an environmental consultant characterize the Slag Pile to determine its constituents, yet the Citigroup Defendants have made no effort to remove the existing hazardous Slag Pile on the Plaintiff's Property despite repeated demands from Plaintiff that they do so.

## COUNT ONE

## COST RECOVERY UNDER CERCLA 107

42. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

43. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) states:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
>
> (1) the owner or operator of a vessel or a facility,

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or Sites selected by such person, from which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
>> i. all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the National Contingency Plan;
>>
>> ii. any other necessary costs of response incurred by any other person consistent with the national contingency plan . . .

44. Defendants are "persons" within the meaning of Section 101(21) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(21).

45. "Hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including aluminum slag, were spilled, leaked, poured, emptied, discharged, dumped disposed, placed or otherwise became located (collectively referred to as "disposed") at Plaintiff's Property at times relevant to this action.

46. There have been "releases" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), or threatened releases, of hazardous substances into the environment at or from Citigroup's Property and the Plaintiff's Property at times relevant to this action.

72760295.4

47. The Plaintiff's Property and Citigroup's Property are "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

48. Defendants are liable persons pursuant to Section 107(a)(1) or 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) or § 9607(a)(2), because they are present owners and/or operators of Citigroup's Property and have arranged for the disposal of hazardous substances in the Slag Pile located on Citigroup's Property and Plaintiff's Property. Furthermore, Defendants are successors-in-interest to USRC and ACC—former owners and/or operators of Citigroup's Property—at a time when hazardous materials were disposed of on the Plaintiff's Property.

49. Such disposal constitutes a "release" or "threatened release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

50. The investigation and actions taken by Plaintiff in connection with the Plaintiff's Property constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with which Plaintiff has incurred costs necessary and consistent with the National Contingency Plan ("NCP") which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is codified at 40 C.F.R. part 300, *et seq*.

51. Plaintiff has incurred and will continue to incur necessary response costs pursuant to Section 107(a)(4)(B) of CERCLA, 42 U.SC. § 9607(a)(4)(B) and implementing regulations.

52. Defendants are jointly and severally liable to Plaintiff for Plaintiff's response costs, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

WHEREFORE, Plaintiff prays that:

    a) judgment be entered in its favor and against Defendants, jointly and severally, for all response costs incurred and to be incurred by Plaintiff;

    b) a declaratory judgment be entered against Defendants regarding their liability for response costs that will be binding on any subsequent action or actions to recover further response costs;

    c) the Court award Plaintiff its costs of suit, including costs of enforcement activities such as attorneys' fees, expert witness fees, interest, and;

    d) the Court award such other and further relief as the Court shall deem just and proper.

## COUNT TWO

## **CONTRIBUTION UNDER CERCLA 113**

53. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

54. In the event that Plaintiff enters into an administrative settlement for purposes of CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) or in the event that the 7th Circuit or Supreme Court clarifies which parties entitled to bring a 113 action, Plaintiff will have incurred and continue to incur additional "costs of response" for removal or remedial action as defined in Sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. § 9601 (23), (24), and (25), and as used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

55. Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) states:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

56. The response actions taken by Plaintiff at the Plaintiff's Property were necessary to protect the public health, welfare, or the environment, and are consistent with the NCP.

57. Pursuant to 42 USC § 9613(f), Defendants are liable to Plaintiff for contribution for any and all necessary costs of response incurred and that will be incurred in the future by Plaintiff, consistent with the NCP.

WHEREFORE, Plaintiff prays that:

    a) judgment be entered in its favor and against Defendants, jointly and severally, for all response costs incurred and to be incurred by Plaintiff;

    b) a declaratory judgment be entered against Defendants regarding their

9

      liability for response costs that will be binding on any subsequent action or actions to recover further response costs;

c) the Court award Plaintiff its costs of suit, including costs of enforcement activities such as attorneys' fees, expert witness fees, interest; and

d) the Court award such other and further relief as the Court shall deem just and proper.

## COUNT THREE

## DECLARATORY JUDGMENT

58. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

59. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiff is entitled to a declaratory judgment holding Defendants liable for their equitable shares of all response costs incurred by Plaintiff, in the past or future, in connection with the Plaintiff's Property.

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendants:

a) ordering Defendants to reimburse Plaintiff for their equitable share, as determined by the Court, of response costs under 42 U.S.C. § 9607(a) which Plaintiff has incurred or may incur in the future in connection with the Plaintiff's Property;

b) ordering a declaratory judgment that Defendants shall be liable under 42 U.S.C. § 9607(a) for their equitable share of response costs, as determined by the Court, which Plaintiff has incurred or may incur in the future in connection with the Plaintiff's Property; and

c) awarding Plaintiff its costs and attorneys' fees and all other relief that the Court deems appropriate.

## COUNT FOUR

## **CERCLA CITIZEN SUIT**

60. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

61. Pursuant to 42 U.S.C. § 9659(a)(1)—

> any person may commence a civil action on his own behalf-- (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities).

62. Pursuant to 42 U.S.C. § 9601(21), Plaintiff is a "person" as referenced in 42 U.S.C. § 9659(a)(1).

63. Pursuant to 42 U.S.C. §§ 9601(21) and 9659(a)(1), Defendants are "persons" as referenced in 42 U.S.C. § 9659(a)(1).

64. Upon information and belief, Defendants' Slag Pile poses a potential threat to human health and the environment because of elevated levels of lead, zinc, cadmium, chromium, and PCBs.

65. Defendants are required to comply with CERCLA pursuant to 42 U.S.C. §§ 9604, 9606, 9607, 9613 and 9621.

66. Defendants failed to comply by refusing to remove or remediate the Slag Pile.

67. Plaintiff provided written notice of its intent to bring this action, as required by § 310(d)(1) of CERCLA, 42 U.S.C. § 9659(d)(1).

68. More than 60 days have passed since the required notices were received, and neither the USEPA nor the IEPA has commenced or is diligently prosecuting a civil or criminal action to redress the violations alleged herein.

69. When a claim is brought pursuant to 42 U.S.C. § 9659, a court issuing an order

under this Section "may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or the substantially prevailing party whenever the court determines such an award is appropriate." 42 U.S.C. § 9659(f).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendants:

    a) ordering Defendants to remove the Slag Pile on both Plaintiff's and Defendants' parcels of land, and take additional steps to remediate the harm or potential harm to human health or the environment;

    b) imposing a civil penalty deemed necessary and just by the Court; and

    c) awarding costs of litigation (including reasonable attorneys' and expert witness fees) to Plaintiff.

## COUNT FIVE
## NEGLIGENCE

70. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

71. Pursuant to state and federal statutes and the common law, Defendants and their predecessors owed and continue to owe Plaintiff a duty of care in connection with the generation, handling, disposal and containment of hazardous substances generated as a result of operations at Citigroup's Property, including previous operation of the aluminum smelters and the facilities associated with the aluminum smelting conducted by the Citigroup Defendants' predecessors.

72. Defendants, as current and former owners of Citigroup's Property and/or as owners or operators of the aluminum smelting facility, owed and continue to owe a duty of care to Plaintiff and Plaintiff's predecessors-in-title to ensure that reasonable measures be taken to safely handle, store, and dispose of the hazardous by-products of those processes, to prevent the continuing migration of contaminants from Citigroup's Property onto and into the Plaintiff's Property, and to remedy the problems they caused.

73. Defendants knew or should have known that operating aluminum smelting facilities and allowing aluminum slag to be discharged onto and beneath the surrounding land would result in the disposal of hazardous substances, and that such disposal caused and is causing releases to the environment that present a serious risk of injury to persons or property, including Plaintiff and the Plaintiff's Property.

74. Defendants knew or should have known that hazardous substances present in the subsurface at Citigroup's Property migrated and are continuing to migrate onto and into adjoining properties, including the Plaintiff's Property.

75. Defendants breached the duty of care owed to the Plaintiff and others by failing to act properly and reasonably to contain hazardous substances at Citigroup's Property, to prevent the discharge of hazardous substances from Citigroup's Property onto Plaintiff's Property, and to promptly and appropriately remedy the problems they caused, including preventing the migration of contaminants onto and beneath Plaintiff's Property.

76. Defendants' negligent acts also include, without limitation, the following:

    a. improperly maintaining Citigroup's Property;

    b. failing to monitor, test, and maintain systems for the detection of hazardous substances on the surface and in the subsurface at Citigroup's Property;

    c. failing to safely handle, store, and dispose of hazardous substances at Citigroup's Property;

    d. failing to promptly notify Plaintiff and/or appropriate governmental authorities of the release(s) of lead, zinc, cadmium, chromium, PCBs and other hazardous substances at Citigroup's Property;

    e. failing to promptly determine the scope of the release(s) of hazardous substances at Citigroup's Property, including without limitation, the lateral extent and depth of contamination in the area of the aluminum smelting operations;

    f. failing to fully delineate the extent and nature of known groundwater contamination plumes originating at Citigroup's Property as required by Illinois statutes

13

and regulations;

      g.    failing to control the movement of hazardous substances from Citigroup's Property into the environment and onto the Plaintiff's Property;

      h.    failing to contain hazardous substances present in the subsurface at Citigroup's Property to the boundaries of Citigroup's Property;

      i.    failing to timely and adequately address and remediate release(s) of hazardous substances at Citigroup's Property, including preventing migration to other properties; and

      j.    committing any and all of the foregoing acts and omissions and thereby subjecting Plaintiff and others to a substantially increased risk of harm.

77. As a direct and proximate result of Defendants' conduct, Defendants have caused Plaintiff to suffer and to continue to suffer financial and economic loss and loss of the use and enjoyment of the Plaintiff's Property, as well as other damages. In light of the risks and dangers that were known or should have been known by Defendants to exist at the time, Defendants' conduct in allowing hazardous substance releases and—after the discovery of such contamination—failing to promptly and adequately investigate, remediate, and notify Plaintiff and/or appropriate governmental authorities of the contamination, were without legal justification or excuse.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants and award Plaintiff compensatory damages in an amount to be determined at trial, together with such other and further relief as the Court deems appropriate.

## COUNT SIX

## TRESPASS

78. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

79. Defendants have allowed and continue to allow lead, zinc, cadmium, chromium, PCBs, and other hazardous substances to migrate from Citigroup's Property to the Plaintiff's

72760295.4

Property.

80. Defendants' unreasonable failure to contain the lead, zinc, cadmium, chromium, PCBs, and other hazardous substances within the confines of Citigroup's Property substantially and unreasonably interferes with the Plaintiff's reasonable use and enjoyment of the Plaintiff's Property.

81. The continuing physical entry of the aforesaid substances onto the Plaintiff's Property interferes with Plaintiff's possession, use, and enjoyment of its own land, is unlawful, and is without Plaintiff's consent.

82. As a result of the continuing migration of lead, zinc, cadmium, chromium, PCBs, and other hazardous substances from Citigroup's Property onto Plaintiff's property, the value of the Plaintiff's Property has diminished in an amount to be determined at trial, and Plaintiff has incurred and will continue to incur costs from remediating and decontaminating the Plaintiff's Property in an amount to be determined at trial.

83. Plaintiff is entitled to a preliminary and permanent injunction ordering Defendants to cease and desist from: (1) permitting the Slag Pile to trespass on Plaintiff's Property; and (2) permitting the continuing migration of lead, zinc, cadmium, chromium, PCBs, and other hazardous substances from Citigroup's Property onto Plaintiff's property.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against the Defendants for:

a) all costs incurred by Plaintiff in remediating and decontaminating the Plaintiff's Property, together with the diminution in value of the Plaintiff's Property arising as a result of the contamination in an amount to be determined at trial;

b) preliminary and permanent injunctive relief; and

c) such other and further relief as the Court deems appropriate.

72760295.4

## COUNT SEVEN

## **NUISANCE**

84. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

85. Defendants' unreasonable failure to contain the Slag Pile and contaminants including lead, zinc, cadmium, chromium, PCBs, and other hazardous substances within the confines of Citigroup's Property substantially and unreasonably interferes with Plaintiff's reasonable use and enjoyment of the Plaintiff's Property and threatens human health and the environment.

86. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury insofar as it has been required to incur substantial expenses remediating and decontaminating its own land, plus it has lost use and enjoyment of its land, and has suffered other damages.

87. Plaintiff is entitled to preliminary and permanent injunctive relief ordering the Citigroup Defendants to cease and desist from: (1) permitting the Slag Pile to trespass on Plaintiff's Property; and (2) permitting the continuing migration of lead, zinc, cadmium, chromium, PCBs, and other hazardous substances from Citigroup's Property onto Plaintiff's property.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Defendants for:

a) all costs incurred and to be incurred by Plaintiff in remediating and decontaminating the Plaintiff's Property; together with the diminution in value of the Plaintiff's Property arising as a result of the contamination in an amount to be determined at trial;

b) preliminary and permanent injunctive relief; and

c) such other and further relief as the Court deems appropriate.

## COUNT EIGHT

## **STRICT LIABILITY**

88. The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

89. Defendants' storage of hazardous substances underground at Citigroup's Property without containment constitutes an abnormally dangerous activity, with a high risk of harm to Plaintiff and to the Plaintiff's Property.

90. The risk of harm resulting from Defendants' failure to remediate and/or contain their lead, zinc, cadmium, chromium, PCBs, and other hazardous substances is substantial.

91. Given the topography, the proximity of the aluminum smelters and associated operations to surface waters and subsurface aquifers, and the close proximity of Citigroup's Property to the Mississippi River, Defendants' surface and subsurface, uncontained, and non-permitted storage of hazardous substances at Citigroup's Property is inappropriate for its locale.

92. Subsurface, uncontained, and non-permitted storage of hazardous substances is not a matter of common usage and the value of such activity was and is outweighed by the substance's dangerous propensity.

93. Defendants had the right to control and did control the operations and waste disposal practices on Citigroup's Property.

94. As a result of Defendants' storage of hazardous substances on Citigroup's Property, Plaintiff's Property was contaminated with lead, zinc, cadmium, chromium, PCBs, and other hazardous substances.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Defendants for all costs incurred by Plaintiff in remediating and decontaminating the Plaintiff's Property, together with the diminution in value of the Plaintiff's Property as a result of the contamination in an amount to be determined at trial, and such other and further relief as the Court deems appropriate.

72760295.4

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

By: /s/ William J. Curtis
William J. Curtis # 6273822
Polsinelli PC
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
wcurtis@polsinelli.com