IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CTI DEVELOPMENT, LLC, | |
| Plaintiffs, | |
| v. | Case No. 3:21-CV-00207-SPM |
| CITIGROUP INC. and MRC HOLDINGS, INC. | |
| Defendants. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of Motion to Dismiss for Failure to State a Claim filed by MRC Holdings, Inc. and Citigroup, Inc. (Doc. 17). Having been fully informed of the issues presented, this Court **DENIES** in part and **GRANTS** in part Defendants' Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff CTI Development ("CTI") filed its original complaint on February 23, 2021 (Doc. 1). Within the complaint, CTI asserted numerous theories of liability under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* as well as supplemental state law claims.

The following facts are taken from that complaint and are accepted as true for the purposes of a motion to dismiss. *Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). CTI seeks recovery from Citigroup and MRC Holdings (collectively "Defendants") for alleged damages caused by a slag waste pile that runs across both CTI's and Defendants' properties (Doc. 1). CTI claims that the Defendants allowed

the hazardous waste to migrate onto its property, which caused environmental damage (*Id.*, ¶2). CTI further alleges that Defendants are responsible for "discharging slag and other hazardous substances . . . and are therefore required to remediate or pay for the remediation of the Slag Pile and any other associated waste and impacted environmental media." (*Id.*, ¶12). CTI claims that MRC (a subsidiary of Citigroup) is the current owner of the property and is the successor to U.S Reduction Company and the American Can Corporation who operated an aluminum smelter on the property (*Id.*, ¶¶ 7,8).

On November 30, 2020, CTI provided defendants, the U.S. Environmental Protection Agency, the Illinois Environmental Protection Agency, and the Attorney General of the United States with written notice of its intent to sue (Doc. 17-1). CTI then filed its complaint in this Court on February 23, 2021 (Doc. 1). Defendants filed their motion to dismiss and memorandum in support (Doc. 17). Plaintiff filed a memorandum in opposition to motion to dismiss, along with supporting memorandum on July 2, 2021 (Doc. 18). Defendants replied to CTI's opposition on July 16, 2021 (Doc. 19). On September 21, 2021, defendants sought and obtained leave of this Court to file supplemental authority, allowing the admission of the Seventh Circuits recent decision, *Von Duprin LLC v. Major Holdings, LLC*, No. 20-1711, 2021 WL 4025150 (7th Cir. Sept. 3, 2021). (Docs. 22, 23).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'Plausibility' is not a synonym for 'probability' in this context, but [plausibility] "asks for more than a sheer possibility that a defendant has acted unlawfully." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074,1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

This Court is generally limited as to what materials it can consider when assessing a complaint subject to a Rule 12(b)(6) motion to dismiss. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). However, a narrow exception occurs when a document is referenced in a plaintiff's complaint, is essential to the accompanying claim, and is attached to a motion to dismiss. *Id.* In such cases, this Court can go beyond the four corners of the original complaint to assess the claims and consider the document as part of the complaint for all purposes. *See* Fed.R.Civ.P. 10(c); *Tierney*

*v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002).

## ANALYSIS

**I.      Count One: CERCLA Section 107**

Defendants assert that CTI has failed to plead facts that "state a plausible cause of action." (Doc. 17). "To establish a claim for cost recovery under § 107(a), a plaintiff must show that (1) the site in question is a 'facility'; (2) the defendant qualifies as a [potentially responsible person]; (3) the facility experienced a release or threatened release of hazardous substances; and (4) the plaintiff incurred costs consistent with the National Contingency Plan in responding to the release." *Von Duprin LLC v. Major Holdings, LLC*, No. 20-1711, 2021 WL 4025150, at *3 (7th Cir. Sept. 3, 2021); *see also United States v. Atlantic Research Corporation,* 551 U.S. 128, 131 (2007).

A quick perusal of the complaint confirms that CTI has properly alleged all four elements of necessary for a claim under § 107(a), but preliminarily the Court wants to clarify that although CTI is a corporation or other business organization, it is still a "person" under § 101(21) of 42 U.S.C. § 9601(21) (Doc. 1).

First, CTI alleges that both its property and defendants' property are "facilities" as defined by § 101(9) of CERCLA, which states that " . . . any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." CERCLA § 101(9); 42 U.S.C. § 9601(9). Even were the allegations of the complaint not deemed true, there is ample evidence that both properties fall within this definition because the attached slag pile straddles both plaintiff's and

defendants' property (Doc. 1-1) and because both parties concede that hazardous substances were detected in, at, around and in the vicinity of said slag pile.

Second, CTI alleges that defendants are "potentially responsible persons" ("PRPs") under §§ 9607(a)(1) or 9607(a)(2) due to their present ownership of the property containing slag waste (Doc. 1). By statute, PRPs include "current owners and operators of a site that experienced a disposal of hazardous materials, past owners or operators at the time of the release . . ." *Von Duprin*, 2021 WL 4025150 at *3.

Third, CTI's complaint states that "[t]here have been 'releases' within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), or threatened releases, of hazardous substances into the environment at or from [defendants'] property and the Plaintiff's Property at times relevant to this action." (Doc. 1 at ¶ 46). Indeed, the Illinois EPA found "hazardous levels of lead, zinc, cadmium, chromium, and PCBs" … "in and around the Slag Pile" … which is shown to be encroaching "from Citigroup's Property south onto Plaintiff's property (*Id.* at ¶¶ 36, 37, 46)

Finally, Plaintiff seeks restitution from defendants for investigative actions and response costs incurred pursuant to § 107(a)(4)(B) of CERCLA and consistent with the National Contingency Plan ("NCP"). While defendants seek to dismiss this count on the basis that "the Complaint does not allege *any* facts or *any* details demonstrating that CTI, as opposed to other parties, incurred CERCLA response costs", they go on to admit that CTI "conducted customary due diligence prior to closing on its tract and the slag pile acquisition." (Doc. 17).

The Court of Appeals for the Seventh Circuit has recently provided guidance as to what constitutes recoverable response costs under CERCLA Section 107. *Von*

*Duprin LLC v. Major Holdings, LLC*, No. 20-1711, 2021 WL 4025150 (7th Cir. Sept. 3, 2021). In *Von Duprin,* the Seventh Circuit upheld a district court's observation that "§ 107(a) permits a company to recover due diligence costs incurred in connection with the investigation of a contaminated site." *Id.* at *13. The Seventh Circuit additionally rejected the argument that such costs are not in compliance with the NCP, finding that "[i]t seems difficult to call such costs *inconsistent* with the NCP, to say nothing of CERCLA's broader objectives." *Id.* at *14.

The *Von Duprin* case is dispositive of this issue showing that due diligence and investigation costs are recognized in this Circuit as being both consistent with the NCP and recoverable under § 107 of CERCLA. *Id.* CTI alleges that such costs were incurred and that they are entitled to relief from Defendants, which is sufficient to survive the 12(b)(6) motion to dismiss because CTI's complaint (taken as true) has "state[d] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Defendants' other arguments related to the validity of these incurred costs are better resolved at the summary judgment stage.

Because CTA has alleged facts sufficient to meet the standards for recovery under CERCLA §107 as specified in this Circuit, defendants' motion to dismiss with respect to **COUNT ONE** is **DENIED**.

II.  **Count Two: CERCLA Section 113(f)**

CTI seeks contribution under § 113(f) in an effort to recover costs for a potential future CERCLA settlement. CTI includes this count "[i]n the event that Plaintiff enters into an administrative settlement . . . or in the event that the 7th Circuit or Supreme Court clarifies which parties are entitled to bring a 113 action." (Doc. 1, ¶54).

The Court of Appeals for the Seventh Circuit has previously clarified the role of section 113(f) as "creat[ing] a right to contribution for parties *already subject to liability* in either a section 107 action or an action by the government under CERCLA § 106." *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014) (emphasis added). CTI has alleged no facts that indicate it has been subject to past liability under §§ 106 or 107 of CERCLA.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 817 (1997). CTI mistakenly attempts to circumvent this fundamental principle by claiming that its § 113 claim is pled "in the alternative to its Section 107 claim – in the event CTI does enter into an administrative settlement during the pendency of this lawsuit." (Doc. 18; Doc. 1, ¶ 54).

CTI relies on Rule 8(d)(2) of the Federal Rules of Civil Procedure for the idea that parties can set out multiple theories of recovery "alternatively or hypothetically" (Doc. 18). CTI then presents its "hypothetical" theory of recovery which relies on the hypothetical settlement occurring at some hypothetical future date; however, this is an incorrect application of Rule 8(d)(2). To the contrary, Rule 8(d)(2) does not create an exception to the actual case or controversy limitation of federal courts, but instead allows a pleading to incorporate multiple theories of recovery for actual injuries. For example, CTI has included counts for both negligence and strict liability related to the same alleged harm, and those counts are properly brought *alternatively* or *hypothetically* to each other as CTI cannot recover for both. The key difference being

that CTI puts forth facts that allege actual injuries, as opposed to a potential injury sometime in the future.

The proper course of action for CTI in this circumstance is to seek leave to amend their complaint at a later date *if* such a CERCLA settlement takes place. Such an amendment would satisfy the good faith requirement of FED. R. CIV. P. 16(b)(4) (if a scheduling order had been entered). *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Amendments are also freely given under FED. R. CIV. P. 15(a)(2) if justice so requires. *See generally Foman v. Davis*, 371 U.S. 178, 182 (1962).

Because Plaintiff has failed to allege any facts indicating that it has been the subject of a CERCLA settlement under §§ 106 or 107, its § 113(f) claim cannot survive this threshold necessary under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6). Therefore, defendants motion to dismiss with respect to **COUNT TWO** is **GRANTED**.

### III. Count Three: Declaratory Judgment

Defendants next seek dismissal of count three, arguing that a request for a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, cannot stand without another viable cause of action (Doc. 17). To be sustained, a declaratory judgment must deal with "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 227, 241 (1937); *see also Calderon v. Ashmus*, 523 U.S. 740, 740-41 (1998).

Because this Court has **DENIED** defendants' motion to dismiss with respect to count one, allowing CTI to proceed on its claim under CERCLA 107, defendants

cannot now argue that there is no other viable cause of action. To the contrary, the requested declaratory judgment deals with a real case or controversy that meets the requisite standard. In light of the forgoing, defendants' motion to dismiss **COUNT THREE** is hereby **DENIED**.

## IV.    Count Four: Citizen's Suit

In Count four, CTI seeks to have this Court issue a judgment under 42 U.S.C. § 9659(a)(1) to order defendants to "remove the Slag Pile . . . and take additional steps to remediate the harm or potential harm to human health or the environment" as well as impose a penalty and award costs of litigation (Doc. 1). Defendants seek to have this claim dismissed because it "does not allege any facts to support a claim that MRC is in violation of any *specific* CERCLA statutory or regulatory requirement." (Doc. 17) (emphasis added). They further allege that the written notice provided by Plaintiff is insufficient because it "fails to identify any specific CERCLA-related requirement that the existence of the slag pile could possibly violate." (Doc. 17).

Pursuant to 42 U.S.C. § 9659(a)(1),

> "any person may commence a civil action on his own behalf – (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the[E]leventh [A]mendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities)."

As demonstrated *infra,* both CTI and defendants are 'persons' under CERCLA. Furthermore, CTI alleges that defendants are in violation of Section 107 and claim that "Slag Pile poses a potential threat to human health and the environment because

Page 9 of 14

of elevated levels of lead, zinc, cadmium, chromium, and PCBs" (Doc. 1, ¶ 62). Moreover, it is undisputed that CTI provided written notice to all required parties more than sixty (60) days prior to filing its complaint as CTI referred to the notice and defendants attached the notice letter to their motion (Doc. 1; Doc. 17-1).

This Court takes umbrage with defendants' claim that CTI's notice and the complaint itself were both vague and "legally inadequate". Indeed, defendants place a greater burden on CTI than CERCLA requires.

The notice requirement involves providing "sufficient information to allow the recipient (defendants) to identify the specific standard, regulation, condition, requirement, or order . . .which has allegedly been violated [and] the activity or failure to act alleged to have constituted a violation." 40 C.F.R. § 374.3(a) (Doc. 17). As applied to this case, the regulation requires CTI to provide sufficient information to defendants that would let *defendants* pinpoint the specific regulation violated. The requirement does not specify that CTI list each and every regulation they claim was violated.

In the letter, CTI refers to "the past and ongoing damages" caused by defendants "discharges of hazardous substances" onto "CTI's property" (Doc. 17-1). Furthermore, the letter specifically states, "CTI intends to file a citizen suit under CERCLA" … "to remediate the slag pile" (*Id.*). The complaint is also replete with references to the hazardous release and discharge, which taken as true, provide sufficient information for defendants to be on notice as to the nature of CTI's citizen suit as well as proving them the opportunity to identify potential CERCLA regulations that could apply. Whether or not Defendants are *actually* in violation of

any CERCLA regulations is a question for the merits and not for the purposes of a motion to dismiss pursuant to Rule 12(b)(6).

CTI has demonstrated that it provided notice to defendants of its intent to file a citizen's suit more than sixty days prior to the filing of their complaint. CTI also advised defendants that the suit was a result of defendants failure to comply with CERCLA requirements. Accordingly, defendants Motion to Dismiss with respect to **COUNT FOUR** is **DENIED**.

V. **Counts Five—Eight: Supplemental Jurisdiction**

Counts five through eight of the complaint assert various theories of liability and are predicated on Illinois state law. In their motion to dismiss, defendants argue that supplemental jurisdiction over these state law counts should not be exercised, primarily because they have argued for dismissal of the three CERCLA counts (Doc. 17). However, because this Court has not dismissed all of CTI's federal claims, the state law counts will not be dismissed for jurisdictional reasons.

When a plaintiff brings both federal and state claims, "accompanying state claims fall within a district court's supplemental jurisdiction if they are 'so related to [the federal] clams . . . that they form part of the same case or controversy.'" *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quoting 28 U.S.C. § 1367(a)). Even though the Supreme Court has long held that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). But, "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll.*

*Of Surgeons*, 522 U.S. 156, 172-173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

Because these state law claims are intimately related to CTI's surviving CERCLA claims and arise from the presence of the same slag pile, the circumstances justify the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a). Defendant's Motion to Dismiss with respect to supplemental jurisdiction over **COUNTS FIVE**, **SIX**, **SEVEN**, and **EIGHT** is hereby **DENIED**.

## VI.   Count Eight: Strict Liability

While this Court has opted to extend supplemental jurisdiction to CTI's state law claims, defendants also seek to have count eight dismissed for failing to state a sufficient claim for strict liability. Under Illinois law, determining whether or not "an activity is abnormally dangerous or ultrahazardous is [a question] of law for the court." *In re Chicago Flood Litigation*, 176 Ill.2d 179, 210 (Ill. 1997). An abnormally dangerous activity is one that is "dangerous in its normal or nondefective state" as opposed to "danger which arises from mere causal or collateral negligence of others . . . under the particular circumstances." *Id.* (quoting *Fallon v. Indian Trail School*, 148 Ill.App.3d 931, 935 (Ill. App. 2 Dist., 1986)).

Illinois courts use factors taken from Section 520 of the Restatement (Second) of Torts to make a determination as to whether or not a given activity is abnormally dangerous. *Id.* These factors are:

> "(a)   existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b)   likelihood that the harm that results from it will be great;

> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and,
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes."
>
> *Id.* (quoting Restatement (Second) of Torts § 520, at 36 (1977).

In the complaint, CTI attempts to creatively frames the storage of hazardous waste material as an abnormally dangerous activity; however, the proper cause of action here sounds in negligence (Doc. 1). CTI's claims are much more about **how** defendants have dealt with this slag pile as opposed to its mere existence. This Court can conceive of safe ways to store and dispose of waste materials through the exercise of reasonable care; therefore, the activity itself cannot be considered abnormally dangerous "in its normal or nondefective state." *Fallon*, 148 Ill.App.3d at 935.

Because the facts alleged in CTI's complaint do not sufficiently establish that defendants were engaged in an ultrahazardous or abnormally dangerous activity, the Illinois state law claim for strict liability "cannot withstand a motion to dismiss." *In re Chicago*, 176 Ill.2d at 212. Defendants Motion to Dismiss with respect to **COUNT EIGHT** is hereby **GRANTED**.

## Conclusion

For the foregoing reasons, the Court **GRANTS** defendant's Motion to Dismiss with respect to **COUNT TWO** and **COUNT EIGHT** and **DENIES** the Motion with respect to the remaining counts. As such, defendants are **ORDERED** to answer

counts one, three, four, five, six and seven of the complaint within fourteen days, or by October 27, 2021.

Additionally, because the complaint was not dismissed in its entirety, defendants are further **ORDERED** to comply with the Federal Rules of Civil Procedure and provide Rule 26 Disclosures by October 27, 2021.

**IT IS SO ORDERED.**

DATED:   October 13, 2021

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
